**In re Michael Scott CHANDLER, Sr., Debtor.**

**Bankruptcy No. 10–16089–MDC.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 24, 2011.

Memorandum Denying Reconsideration Oct. 24, 2011.

Eugene A. Steger, Jr., Eugene Steger & Associates PC, Chadds Ford, PA, Michael J. Bresnahan, West Chester, PA, for Debtor.

*MEMORANDUM*

MAGDELINE D. COLEMAN,
Bankruptcy Judge.

## I. *INTRODUCTION*

Debtor Michael Scott Chandler, Sr. (the "Debtor") commenced a Chapter 7 bankruptcy case on July 23, 2010. Later, the Debtor converted his bankruptcy case to Chapter 11 on August 23, 2010. Throughout the Debtor's bankruptcy case the disposition of certain real estate consisting of 35.9 acres of real property located at 438 McFarlan Road, Kennett Township, Pennsylvania and identified as Tax Parcel ID Nos. 62–4–129.1, 129.3, 130, 131, and 132 (the "Property") pursuant to an Asset Sale Agreement dated May 12, 2010 (the "Sale Agreement") has remained a central issue. Initially, this Court addressed the parties' dispute over the disposition of the Property in the context of a motion for relief from the automatic stay filed by the Debtor's estranged wife, Dolores Chandler ("Mrs. Chandler"). That litigation was resolved by this Court in an Opinion and Order issued December 17, 2010 [Docket No. 88] (the "Lift–Stay Order"). The Lift–Stay Order granted Mrs. Chandler relief from the automatic stay to pursue all rights and claims she has against the Debtor in equitable distribution and support in the divorce proceeding pending in the Chester County Court of Common Pleas (the "Divorce Proceeding") captioned *Dolores R. Chandler v. Michael S. Chandler,* Civil Action No. 04–06895. However, the Lift–Stay Order denied Mrs. Chandler to consummate the Sale Agreement.

Now, the parties' dispute over the disposition of the Property has evolved to dominate the plan confirmation process and requires the Court to determine whether it must confirm a plan of reorganization proposed by Mrs. Chandler that complies with the requirements of 11 U.S.C. § 1129(a), but is opposed to by the Debtor on the basis that the sale of the Property is not in his best interest.

## II. *RELEVANT BACKGROUND*

During the course of the Debtor's case, the Debtor has submitted four separate plans of reorganization and accompanying disclosure statements. None of the proposed plans were transmitted to creditors because, among other things, the disclosure statements accompanying said plans were seriously deficient. After the expiration of the Debtor's exclusivity period, Mrs. Chandler filed on May 6, 2011, a Chapter 11 Plan [Docket No. 158] (the "Plan") and accompanying disclosure statement [Docket No. 157] (the "Disclosure Statement"). On May 31, 2011, this Court entered an Order approving the Disclosure Statement and scheduling a hearing on the confirmation of the Plan for July 26, 2011 (the "Confirmation Hearing"). Consistent with the requirements of F.R.B.P. 3017(a), Mrs. Chandler served by mail to creditors and other parties in interest the Plan and the Disclosure Statement. All parties were given until July 19, 2011, to object to the Plan. The primary feature of the Plan calls for the sale of the Property pursuant to the pre-petition Sale

Agreement. As summarized in greater detail in this Court's memorandum accompanying the Lift–Stay Order, *In re Chandler*, 441 B.R. 452, 458–60 (Bankr.E.D.Pa. 2010), the Sale Agreement represents the culmination of efforts by a conservator appointed by the Chester County Court of Common Pleas to effectuate sale of the Property to Trilogy Investments, LLC ("Trilogy") for $950,000.

Prior to the Confirmation Hearing, the Debtor filed a timely objection to the Plan (the "Objection") arguing that the Plan should not be confirmed because, *inter alia*, (1) the Property was required for the continuation of the Debtor's mushroom growing operation and its sale would prevent his reorganization; (2) the Debtor should be permitted to exercise his rights provided by 11 U.S.C. § 544(a)(3) and preclude the sale of the Property to Trilogy; and (3) the proposed sale of the Property to Trilogy is not in the best interests of the Debtor. This Court received no other objections to the Plan.

On July 26, 2011, this Court conducted a confirmation hearing (the "Confirmation Hearing") on the Plan filed by Mrs. Chandler. At the Confirmation Hearing, Mrs. Chandler established that the creditors of the Debtor have unanimously voted to accept the Plan. Mrs. Chandler also established and the Debtor conceded that the requirements for confirmation of the Plan as set forth in 11 U.S.C. § 1129(a) have been satisfied. The Plan provides for the payment in full of all allowed claims of the Debtor's estate, and, with respect to certain secured claims, that such secured claims will pass through the Debtor's bankruptcy case unaffected.

Having admitted that the Plan complies with § 1129(a), the Debtor abandoned the grounds raised by his written Objection. Despite not addressing the issue in his Objection, the Debtor instead and once again raised at the Confirmation Hearing the issue of the Property's valuation. He contends, as he has throughout this bankruptcy, that the sale price contemplated by the Sale Agreement is far below the Property's true valuation. Although not raised in his Objection, this Court is extremely familiar with the Debtor's arguments with regard to his estimation of the Property's value.

As previously recognized by this Court in its memorandum accompanying the Lift–Stay Order:

> "The Debtor admitted that he filed for bankruptcy protection in order to prevent the sale to Trilogy and thereby preserve the Property because it is his principal source of income. He believes the proposed sale would leave him with insufficient assets to fund the claims of his creditors, including those owed to the Movant. He proposes in the alternative to conduct a sale in connection with this bankruptcy case with the goal of obtaining a price closer to his estimation of the Property's true value."

*In re Chandler*, 441 B.R. 452, 460 (Bankr. E.D.Pa.2010).

Despite having over a year to accomplish § 544(a)(3) sale, the Debtor has done nothing. He now makes essentially the same arguments in opposition to the Plan. The Debtor admits that the Plan complies with § 1129(a); however, he argues that this Court has the discretion to disapprove of the Plan based ostensibly on his belief that his personal interests would be harmed if the sale to Trilogy was allowed. In response to the Debtor's arguments, this Court requested, and the parties agreed to submit, post-hearing briefs addressing whether this Court had the discretion to disapprove the Plan despite its compliance with the requirements set forth in 11 U.S.C. § 1129(a).

On August 2, 2011, Mrs. Chandler, Triology, Wendy W. McLean (the state court appointed conservator in the Divorce Proceeding) and Prudential Fox & Roach (the conservator's realtor) submitted letter briefs regarding the Court's ability to disapprove a plan that complied with § 1129(a). The Debtor elected not to submit any post-hearing brief. Instead, the Debtor filed a proposed Fifth Amended Plan of Reorganization and Disclosure Statement along with an Emergency Motion to Approve the newly proposed disclosure statement and to stay this Court's consideration of the approval of the Plan [Docket No. 261] (the "Emergency Motion")[1]. On August 8, 2011, this Court entered an Order denying the Emergency Motion.

## III. DISCUSSION

■■■ Before addressing whether this Court has discretion to deny confirmation of the Plan despite its compliance with § 1129(a), this Court will elaborate on its reasons for refusing to consider the Debtor's arguments made at the Confirmation Hearing with regard to the valuation of the Property. All parties, including the Debtor, received adequate notice of the deadline to file objections to the Plan. Despite this fact, the Debtor chose to wait until the Confirmation Hearing to raise an oral objection to the Plan based on his purported valuation of the Property. As this Court stated at the Confirmation Hearing, the Debtor's objection based on the sufficiency of the sale price of the Property to be realized by the Sale Agreement was not timely. A party's failure to raise an objection to a proposed plan prior to the deadline fixed by this Court results in a waiver of a party's right to object. *In*

*re Seatco, Inc.*, 259 B.R. 279, 285 (Bankr. N.D.Tex.2001); *In re Richard Buick, Inc.* 126 B.R. 840, 848 (Bankr.E.D.Pa.1991).

Generally, bankruptcy courts are not required to consider oral motions, including objections. *See, e.g., In re Bistrian*, 184 B.R. 678, 683–84 (E.D.Pa.1995) (finding that the bankruptcy court committed no error in refusing to consider a debtor's oral motion). In *Bistrian*, the court identified specific due process ramifications of allowing a debtor's motion for voluntary dismissal to be made orally. As explained by the court in *Bistrian:*

> "If the court had considered [the debtor's] oral motion to dismiss, absent creditors would have had no notice of her motion ... Written motions that 'state with particularity the grounds therefor' allow parties to decide whether to oppose them or not, and to file thorough, researched responses. Written motions also allow the court to engage in its own research and analysis in advance of the hearing. In contrast, unrelated oral motions, by definition, raise new issues that neither the court nor the parties could have foreseen, or for which they could have prepared."

*Id.* at 683.

Although addressing the notice requirements embodied by F.R.B.P. 9013, this Court finds the due process concerns identified in *Bistrian* equally applicable to the Debtor's attempt to raise his oral objection to the confirmation of the Plan. The Debtor, along with all other parties in interest, received adequate notice of the Plan, the Disclosure Statement and this Court's deadline for filing of objections to the Plan. This Court can conceive of no legitimate reason why the Debtor's oral objection to

---

**1.** The Emergency Motion was filed by Debtor's new proposed counsel, Ciardi & Ciardi, P.C. ("Ciardi"). The Debtor has also filed an application to employ Ciardi as his new bankruptcy counsel.

the Plan's valuation of the Property could not have been through normal diligence raised in the Debtor's Objection. *See, e.g., In re Richard Buick, Inc.* 126 B.R. 840 (Bankr.E.D.Pa.1991) (observing that for neglect to be excusable "the objecting party must prove that its failure to file the objection in a timely manner was the result of something more than ordinary diligence; it must be something that could not have been prevented by diligence") (quotations and citations omitted). If this Court had allowed the Debtor's oral objection, the Debtor's creditors and other parties in interest would have been deprived an opportunity to present evidence on the issue.

Further, this Court finds that by allowing the Debtor to rehash old arguments based on no more than the Debtor's unsubstantiated opinion will only result in further delay and prejudice to the creditors of the Debtor's estate. The valuation of the Property has been at issue throughout the Debtor's bankruptcy case. He has steadfastly maintained that the value of the Property exceeds $2,000,000. The Debtor had over a year to take some action to substantiate his claims with regard to the Property's value. For whatever reason, the Debtor elected to do nothing. For these reasons, this Court refused to consider the Debtor's untimely, oral objection to the Plan.

■ Having considered the post-hearing papers, this Court also finds that it has no discretion to disapprove the Plan where the Plan Proponent has established that each of the requirements of 11 U.S.C. § 1129(a) have been met. *In re Armstrong World Industries, Inc.,* 432 F.3d 507, 511 (3d Cir.2005) ("A court will confirm a plan if it meets all of the requirements set out in section 1129(a)."); *In re Fur Creations by Varriale, Ltd.,* 188 B.R. 754, 758 (Bankr.S.D.N.Y.1995); *In re Gyro–Trac (USA), Inc.,* 441 B.R. 470, 477

(Bankr.D.S.C.2010) ("if all section 1129 requirements are met, a court has no discretion with regard to chapter 11 plan confirmation"); *In re TCI Holdings, LLC,* 428 B.R. 117, 132 (Bankr.D.N.J.2010). To the extent the Property is necessary for the continuation the Debtor's mushroom growing business, the Debtor has had ample opportunity to propose and to have confirmed a plan that could have addressed the concerns he now raises. As a result, this Court is unwilling to afford weight to his present concerns. *See, e.g., In re River Village Associates,* 161 B.R. 127, 143 (Bankr.E.D.Pa.1993) ("in light of the fact that the Debtor and its equity holders have already had three opportunities to confirm a plan and have failed to do so, we are less than anxious to give their preferences deference at this time.").

■ Moreover, in an individual chapter 11 proceeding, a debtor's interest in property of the estate are junior to the interests of the creditors of the estate. *In re Lett,* 632 F.3d 1216, 1222 n. 13 (11th Cir.2011). By requesting that this Court deny confirmation based on the Debtor's hypothetical belief that an alternative plan may accrue greater benefits to him while not producing any greater benefit to his creditors, the Debtor is asking this Court to put his personal interests ahead of the interests of his creditors. *See, e.g., In re Domiano,* 442 B.R. 97, 108–09 (Bankr. M.D.Pa.2010) ("The likelihood of a successful reorganization within a reasonable period of time must be shown to be more than a debtor's hopes or best case scenario."); *In re American Family Enterprises,* 256 B.R. 377, 403 (Bankr.D.N.J.2000) (acknowledging that a court's inquiry into the "fundamental fairness" of a proposed plan focuses on the interest of individual creditors). "Chapter 11 strikes a balance between a debtor's interest in reorganizing and restructuring its debts and the credi-

tors' interest in maximizing the value of the bankruptcy estate." *Fla. Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 51, 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008). Rather than striking a balance between his interests and those of his creditors, the Debtor would have this Court rely on his interests to trump those of his creditors. This Court will not tolerate such a result.

For the reasons stated herein, this Court finds that the immediate approval of the Plan will be in the best interests of the Debtor's estate and that further delay will cause prejudice to the creditors of the Debtor's estate. An order confirming the Plan will be entered.

## MEMORANDUM

### INTRODUCTION

This Court held a hearing on September 30, 2011 (the "Hearing"), to address the Motion for Reconsideration dated September 2, 2011 (the "Motion"), filed by Michael Scott Chandler, Sr. (the "Debtor"). In the Motion, the Debtor requested that this Court vacate its Order dated August 24, 2011 (the "Order"), confirming the Chapter 11 Plan (the "Plan") as proposed by Dolores R. Chandler (the "Plan Proponent"). The Debtor claimed that, contrary to findings set forth in this Court's Memorandum dated August 24, 2011 (the "Memorandum"), and the Debtor's previous representations to this Court, the Plan does not comply with § 1129(a). Specifically, the Debtor contended that this Court should not have confirmed the Plan because the Plan Proponent proposed the Plan in bad faith and constitutes an "attempt to de-

fraud the Court and the Debtor's creditors." Motion, ¶ 9(B)(ii).

As evidence of the Plan's noncompliance with § 1129(a), the Debtor cited (i) the failure of the Plan Proponent to attach the Agreement of Sale with Trilogy Investments, LLC ("Trilogy") dated May 12, 2010 (the "Sale Agreement") to the Plan or the Disclosure Statement approved by this Court on May 31, 2011; (ii) the expiration of the Sale Agreement; and (iii) the failure of the Plan Proponent to properly serve notice of the hearing on the disclosure statement in compliance with L.B.R. 9014–3(g). The Debtor further argued that the Court should vacate the Order because he properly raised an objection to the value of the Property in the Objection of Debtor to Confirmation D. Chandler Plan (the "Plan Objection").

Prior to the Hearing, the Plan Proponent, Trilogy and Prudential Fox Roach Realtors ("Prudential") each filed written responses to the Motion (collectively, the "Responses"). At the Hearing, this Court heard further arguments from the Debtor and other parties in interest as to whether this Court should vacate the Order. No creditors joined the Debtor in his request for reconsideration. After considering the Motion, Responses and arguments of counsel, the Court issued a bench ruling denying the Motion.

This Memorandum Opinion is consistent with the Court's September 30, 2011 bench ruling and is submitted pursuant to Local Rule 8001–1(b)[1] to further expound upon the reasons for this Court's Order dated September 30, 2011. The discussion below, along with this Court's previous opinions issued in connection with this case,

---

1. Local Rule 8001–1(b) provides: Opinion in Support of Order. The bankruptcy judge whose order is the subject of an appeal may, within 14 days of the filing of the notice of appeal, file a written opinion in support of the order or a written supplemental opinion that amplifies any earlier written opinion or recorded oral bench ruling or opinion. L.B.R. 8001–1(b) (2008).

constitutes the Court's findings of facts and conclusions of law.

### FACTUAL AND PROCEDURAL BACKGROUND

Just as this document is this Court's third written opinion to be issued in connection with the Debtor's bankruptcy case, Ciardi Ciardi & Astin ("Ciardi") is the Debtor's third counsel in this bankruptcy and are the attorneys responsible for filing the instant Motion. Originally, the Debtor was represented by Michael Bresnahan who was responsible for filing on July 23, 2010, an emergency petition requesting chapter 7 relief. Sometime shortly thereafter, the Debtor reconsidered his decision to employ his initial bankruptcy counsel. On or about August 20, 2010, the Debtor retained Eugene Steger & Associates, P.C. ("Steger") who promptly filed a motion to convert the Debtor's case from one pending under chapter 7 to one pending under chapter 11. On August 23, 2010, this Court granted the Debtor's motion to convert, and, on October 26, 2010, this Court approved the retention of Steger. Steger continued to represent the Debtor until September 27, 2011, when this Court granted Steger's Motion to Withdraw as Attorney.

On July 26, 2011, this Court held a hearing addressing confirmation of the Plan. The Debtor was represented by Steger at the confirmation hearing. As more fully discussed in its Memorandum, this Court found and all parties agreed that the Plan complied with the provisions of 11 U.S.C. § 1129(a). The only issue remaining to be decided was whether harm to the Debtor's personal interest was in and of itself sufficient to deny confirmation of a plan that otherwise complied with § 1129(a). After consideration of the parties' post-trial papers and as stated in the Memorandum, this Court held the Debtor may not "rely on his interests to trump those of his creditors" and granted confir-

mation of the Plan. *In re Chandler*, 459 B.R. 215, 221 (Bankr.E.D.Pa.2011).

Despite the fact that Steger had not yet withdrawn as Debtor's attorney and prior to this Court's issuance of the Order and the Memorandum, Ciardi filed on August 2, 2011, its application for employment and its Fed. R. Bankr.P. 2016(b) disclosure reflecting that Ciardi had received a retainer in the amount of $10,000 on or about August 1, 2011. On the same day, Ciardi filed on behalf of the Debtor an Expedited Motion to Stay of Consideration of Matters Held under Advisement on July 26, 2011, and for Approval of the Fifth Amended Disclosure Statement related to the Fifth Amended Plan of Reorganization Proposed by the Debtor (the "Plan Motion"). On August 8, 2011, this Court denied expedited consideration of the Plan Motion. The next day, the Debtor filed a notice of motion scheduling a hearing on the Plan Motion for September 6, 2011. The September 6 hearing was ultimately rescheduled to October 4, 2011. Prior to this date and for the reasons stated herein, this Court issued its Order denying the instant Motion, the effect of which was to render moot this Court's consideration of the Debtor's Fifth Amended Disclosure Statement and Fifth Amended Plan of Reorganization.

### ANALYSIS

Generally speaking, reconsideration is proper where the moving party demonstrates one of three grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999) (*citing N. River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir.1995)).

The Debtor does not argue that there has been an intervening change in controlling law or that the availability of new evidence would impact this Court's original decision. Rather, the Debtor argued in both his Motion and at the Hearing that this Court should vacate its Order to prevent manifest injustice that will result from several errors that occurred in connection with this Court's confirmation of the Plan.[2]

■ The Debtor contends that the Court erred in its finding that the Plan complied with § 1129(a).[3] First, the Debtor argued that this Court erred in finding that the Plan complied with § 1129(a)(1) because the Sale Agreement had expired prior to confirmation on its own terms on or about March 28, 2011. As a result, the Plan is defective because the Sale Agreement cannot be assumed and no sale of the Property[4] can occur. Second, the Debtor contends that the Court erred in finding that the Plan was proposed in "good faith" as required by § 1129(a)(3). Debtor posits that the Plan Proponent's failure to attach a copy of the Sale Agreement to the Disclosure Statement or Plan deprived creditors or other parties in interest of suffi-

cient notice of the Sale Agreement terms. Specifically, Debtor alleged that the actual sale price for the Property was $590,000 because the Sale Agreement included a Rental Loss Reserve of $315,000 to be held for three (3) years. Debtor contends that Plan Proponent's failure to disclose this fact constitutes a fraud on both the Court and the Debtor's creditors. Third, the Debtor contends that the Plan Proponent improperly noticed the hearing on the Disclosure Statement in a further attempt to defraud the Court and the Debtor's creditors. Debtor argues that the Debtor failed to serve all creditors with notice of the hearing on the Disclosure Statement as required by L.B.R. 9014-3(g).[5] Fourth, Debtor seeks relief from the Order on the basis that the Court erred in finding that the Debtor's Plan Objections did not include any objection to the value of the Property. Debtor contends that the issue of the Property's value was set forth in the Plan Objection and that value was a significant issue because the Plan Proponent intentionally attempted to conceal the Sale Agreement terms from the Court and creditors. Finally, at the Hearing, Debtor

---

2. The Debtor's Motion appears to identify Fed.R.Civ.P. 60(b)(1), (2), (3), & (6) as the statutory basis for the relief requested. Each subsection carries with it a different standard for relief. The Debtor's Motion fails to either address each standard or set forth what facts are relevant to the merits of the Debtor's entitlement to relief under each subsection. Problematically, the Debtor simply asserts that he is entitled to relief under Fed.R.Civ.P. 60(b) generally. See, e.g., *Reynolds v. Wagner*, 128 F.3d 166 (3d Cir.1997) (stating "an argument consisting of no more than a conclusory assertion ... will be deemed waived.").

3. Debtor's present argument that the Plan does not comply with § 1129(a)(1) is contrary to the position taken by Debtor at the confirmation hearing. As recognized by this Court in its Memorandum, Debtor's prior counsel

admitted to this Court that the Plan complied with § 1129(a). *In re Chandler*, 459 B.R. 215, 220–21 (Bankr.E.D.Pa.2011) (acknowledging that the Debtor agreed that the Plan complies with § 1129(a)(1)). It is unclear as to why the Debtor's present counsel believe principles of estoppel do not preclude it or its client from adopting a position directly contrary to a position taken by Debtor's prior counsel.

4. The property is real estate consisting of 35.9 acres of real property located at 438 McFarlan Road, Kennett Township, Pennsylvania and identified as Tax Parcel ID Nos. 62–4–129.1, 129.3, 130, 131, and 132 (the "Property").

5. Contrary to Debtor's arguments, L.B.R. 3016–1(f) governs service of a disclosure statement. Plan Proponent appears to have complied with the requirements of that rule.

argued for the first time that his best interests should have been considered because the Plan, among other things, fails to provide for either (i) the payment of capital gains taxes associated with the sale of the Property, or (ii) the payment of any deficiency claims that may result if the proceeds of the sale of the Property are insufficient to satisfy the claims of the Debtor's secured creditors.[6]

The Debtor has failed to establish that any of the alleged deficiencies warrant granting him relief from the Order. The omission of the Sale Agreement from the Disclosure Statement or the Plan was patently apparent prior to the time this Court approved both the Disclosure Statement and the Plan. As such, any objections based on its omission are now untimely.[7] Further, there is no evidence that attachment of the Sale Agreement was required. All of the Debtor's unsecured creditors, except for one small trade creditor owed approximately $1,900, were involved with the Sale Agreement.[8] The Plan provides that the sale proceeds would be used to pay the claims of the unsecured creditors only. As such, Debtor's argument that unsecured creditors were defrauded by the Plan Proponent's failure to include the Sale Agreement is disingenuous at best.

As for the Debtor's contention that the issue of value of the Property was raised in its Plan Objection, the Debtor has not set forth any facts or the applicable standard that would warrant the Court reconsidering and vacating its decision on that issue as set forth in the Court's Memorandum. In support of his position, the Debtor has simply restated Paragraph 6 of the Plan Objection and added as a parenthetical the words "of the subject real estate." Debtor's restatement of this objection is unsupported by the record in this case. Debtor's then counsel acknowledged at the confirmation hearing that the Plan Objection, including Paragraph 6, did not relate to the value of the Property, but to the Plan Proponent's claim.

■ Motions for reconsideration "may not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Johnson v. Diamond State Port Corp.*, 50 Fed.Appx. 554, 560 (3d Cir. 2002) (*quoting Brambles USA, Inc. v. Blocker*, 735 F.Supp. 1239, 1240 (D.Del. 1990)); *see also Rock v. Voshell*, No. 05–1468, 2005 WL 3557841, at *1 (E.D.Pa. Dec. 29, 2005) ("Mere dissatisfaction with the Court's ruling is not the basis for such a reconsideration, nor can such a motion be used as a means to put forth additional arguments which could have been made but which the party neglected to make.").

■ The Debtor now wants to put on additional evidence as to why the Plan Proponent did not present sufficient evidence to establish compliance with

---

6. The Debtor offered no explanation how either contingency could occur given that no creditor has asserted such a claim and the claims bar date has expired.

7. The Debtor argued that the failure to attach the Sale Agreement to the Plan was a purposeful omission intended to hide the fact that at the time of the Plan's confirmation the Sale Agreement had terminated. However, Debtor's argument overlooks the tolling provisions contained in section 6.3.1 of the Sale Agreement. Moreover, this Court recognizes that

as evidenced by an email attached as Exhibit A to the Plan Proponent's Response to the Motion the parties intended to exercise their rights under the tolling provision. As a result, this Court is unconvinced of the merit of the Debtor's present arguments even if the Debtor's present arguments had been raised at the appropriate time.

8. These creditors include (1) the Plan Proponent, (2) Trilogy, (3) Prudential, and (4) Wendy W. McLean, Esquire, the state court appointed conservator.

§ 1129(a). Contrary to the contentions of the Debtor, the time to raise any objection based on Plan feasibility or the sufficiency of notice was when the issue of the sufficiency of the Disclosure Statement or the Plan was before this Court. As observed by Bankruptcy Judge Markovitz of the Western District of Pennsylvania,

> As busy as this court is, it nonetheless is required to review the evidence and the applicable law and to render a sound decision the first time that a matter is brought before it. The court does not have the luxury of treating its first decision as a dress rehearsal for the next time. The court is required to 'get it right' the first time. No less is expected of counsel. Initial arguments are not to be treated as a dress rehearsal for a second attempt to prevail on the same matter. Counsel is also expected to 'get it right' the first time and to present all the arguments which counsel believes support its position. Arguments which counsel did not present the first time or which counsel elects to hold in abeyance until the next time will not be considered. Arguments which were fully considered and rejected by the court the first time will not be considered when repeated by counsel the second time. Counsel does a disservice to his clients by such unprofessional conduct.

*In re Armstrong Store Fixtures Corp.*, 139 B.R. 347, 350 (Bankr.W.D.Pa.1992).

The same is true of the other arguments raised by the Debtor at the Hearing and in support of his present Motion. In addition to his arguments with regard to the omission of the Sale Agreement, the Debtor's counsel argued at the Hearing that the Debtor may be harmed by the fact that the Plan does not provide for the payment of capital gains taxes or for the payment of any deficiency claims. Just as the failure to attach the Sale Agreement to the Dis-

closure Statement or the Plan was readily apparent, the fact that the Plan did not provide for such hypothetical contingencies was also readily apparent the time this Court approved both the Disclosure Statement and the Plan. Each of the contingencies now imagined by the Debtor's present counsel was equally imaginable at the time each of the Debtor's creditors voted in favor of the Plan. Yet, none raised any objection to the sufficiency of the contents of the Disclosure Statement or the Plan. At this late stage, this Court will not substitute its own judgment for the judgment of the Debtor's creditors.

This Court also recognizes that the Debtor is bound by his choice of counsel and the decisions made by his counsel in litigating on his behalf. For whatever reason, the Debtor's prior counsel elected not to raise the arguments made in the present Motion. The Debtor has provided no evidence to establish that prior counsel's decision not to raise these arguments was the result of neglect. As much as the failure to raise these arguments may be attributed to omission or negligence, this Court observes that the decision not to make these arguments may have been a strategic decision of the Debtor's prior counsel. As recognized by the Supreme Court,

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)

(quotations omitted); *see also Coltec Indus., Inc. v. Hobgood,* 280 F.3d 262, 274 (3rd Cir.2002) ("courts have not looked favorably on the entreaties of parties trying to escape the consequences of their own 'counseled and knowledgeable' decisions.").

The mere fact that the Debtor has since replaced his counsel does not change this analysis. The Debtor's new counsel is not entitled to use a motion for reconsideration to revisit the trial strategy of the Debtor's prior counsel. The fact that a new attorney chooses to adopt a different position is not sufficient to warrant the granting of a motion for reconsideration. If his prior counsel was negligent in the performance of his duties, the Debtor's remedy lies in a malpractice action and not in a motion for reconsideration. *See, e.g., Sweeney v. Verizon Communications, Inc.,* Civ. No. 09–10798, 2010 WL 3191589, at *2 (D.Mass. Aug. 12, 2010) (holding that extraordinary circumstances did not justify granting reconsideration motion).

■ In apparent recognition of the fact that the alleged procedural defects in the Plan approval process are insufficient to warrant reconsideration, the Debtor also argued that he will suffer hardship if reconsideration is not granted.[9] To merit reconsideration pursuant to Fed.R.Civ.P. 60(b)(6), the Debtor must show "extreme and *unexpected* hardship." *Talley v. City of Atlantic City,* 406 Fed.Appx. 584, 585 (3d Cir.2011) (emphasis added); *see also Budget Blinds, Inc. v. White,* 536 F.3d 244, 255 (3d Cir.2008) (stating that the party seeking Fed.R.Civ.P. 60(b)(6) relief would have to show "extreme" and "unexpected" hardship if the judgment stands). This Court finds that nothing about the hardship the Debtor expects to suffer is *unexpected.* Not only was the sale of the Property to Trilogy expected, the impending sale was among the primary reasons the Debtor filed for bankruptcy relief. *In re Chandler,* 441 B.R. 452, 463 (Bankr. E.D.Pa.2010) (acknowledging that "the Debtor stated in his testimony that he filed to prevent the sale"). The Debtor has had over a year to anticipate and to plan for this contingency. As a result, the Debtor may not rely on the hardship he may suffer if the Plan is confirmed and the sale is consummated to establish that he is entitled to relief pursuant to Fed.R.Civ.P. 60(b)(6). *See, e.g., JPMorgan Chase Bank, N.A. v. Pandolfelli (In re Pandolfelli),* Adv. No. 09–02068, 2011 WL 2708831, at *7 (Bankr.D.N.J. Jul. 11, 2011) (denying Fed.R.Civ.P. 60(b)(6) motion where result of inaction "were to be expected given his course of conduct").

■ Finally, this Court observes that the interests of finality weigh heavily against granting the motion. *See Budget Blinds, Inc. v. White,* 536 F.3d 244, 255 (3d Cir.2008) (explaining that the interests of finality require that a motion for reconsideration should be used sparingly and limited to exceptional circumstances); *Construction Drilling, Inc. v. Chusid,* 131 Fed. Appx. 366, 371 (3d Cir.2005) (finding that FRCP 60(b)(6) catch-all provision is limited to exceptional circumstances). The parties are now ready to close on the transaction which will result in the full payment of the unsecured creditors' claims. Allowing the Debtor to propose his own plan of reorganization appears to be an exercise in futility and will only

---

**9.** Debtor now argues for the first time that confirmation of the Plan is not in his best interest. The Debtor was provided an opportunity to present such an argument prior to the entry of the Order. The Debtor and his new counsel elected not to do so, and filed the Plan Motion instead. Debtor cannot now rely on that decision as a basis for relief from the Order.

serve to prejudice the creditors of the Debtor's estate by forcing them to wait longer for the payment of their claims. All of the plans proposed by the Debtor, including the most recently filed, are dependent on financing using the Property as collateral. The Debtor owns the Property as a tenant by the entirety with his wife. Unfortunately for the Debtor, his wife is also the Plan Proponent and she has repeatedly indicated that she would never consent to the Debtor placing a mortgage on the Property to secure the funding he would need to finance his proposed plan. This Court will not permit the payment of the Debtor's creditors to be further delayed.

*SUMMARY*

After hearing on the Motion and consideration of all of the evidence presented by the parties, the Court denies the Motion. This Court finds that the Debtor has failed to allege any basis for relief under Fed. R.Civ.P. 60(b).